## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**COURTNEY D. SPENCER,**

       **Plaintiff,**

**V.**

**THE UNIVERSITY OF NEW
MEXICO BOARD OF REGENTS,**

       **Defendant.**

## COMPLAINT AND JURY DEMAND

Plaintiff Courtney D. Spencer, through her attorneys, for her Complaint states:

### I.  PRELIMINARY STATEMENT

At the time of all events described in this complaint, Plaintiff was a student at the

University of New Mexico ("UNM"). Plaintiff brings this action against UNM under Title IX

of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., ("Title IX") and the

implementing regulations promulgated under Title IX, arising out of alleged willful

indifference of UNM in the manner in which it responded, or failed to respond, to her report

of a gang rape on and near campus committed by UNM football players. According to

independent witness accounts and expert review, Plaintiff probably was slipped a 'rape drug'

earlier in the evening and had complete and total memory loss of nearly four hours; she was

incapacitated as a result of the mix of alcohol and the drug(s). Some male students including

some football players surrounding the incapacitated Plaintiff did not report to police or

campus personnel or dorm residents an incapacitated fellow student in need of help, but

instead took advantage of her incapacitated state, and recorded her on cell phones.  Male students including athletes, engaged in recording, not reporting the incapacitated female student.  At least three UNM football players and a CNM student sexually assaulted her, and then lied to police about it.  The men even recorded scenes on their cell phones to send around to others via Snapchat and the internet.

Thereafter, UNM administrators, including the Office of Equal Opportunity ("OEO") and the Athletic Department, interfered with the police investigation of these rapes. UNM administrators demonstrated more concern with returning its football players to team play, protecting the athletic department, and protecting males, than with promptly and properly investigating Plaintiff's report of being drugged by someone and raped by football players, thereby failing to take prompt and effective measures to prevent the continued sexual harassment of the young woman plaintiff on the UNM campus. The manner in which UNM administrators including OEO responded to Plaintiff's report demonstrates deliberate indifference, and willful decisions and acts to *not* end sexual harassment under Title IX. This conduct by OEO and Athletic Department supervisors re-victimized Plaintiff, creating an 'on campus environment' for her of sexual harassment which was severe, pervasive and objectively offensive, and which deprived Plaintiff of the benefit of access to educational benefits, and caused other injury and harm.  As a result, Plaintiff lost her academic scholarship, was forced to move away to attend college out-of-state at full tuition prices, is in extensive therapy related to Post Traumatic Stress Disorder, and suffered other harms, damages and injuries. The male perpetrators were not disciplined under any UNM code of conduct, even for disseminating the unconsented secret video around the internet, and remain students and athletes.

## II. PARTIES, JURISDICTION AND VENUE

1.  Plaintiff is a resident of New Mexico.

2.  During the school year 2013-2014, Plaintiff was a freshman scholarship student at UNM with excellent grades.

3.  Defendant is a public body and instrumentality of the State of New Mexico and the empowered governing authority for UNM, an educational institution, with its primary campus in Bernalillo County, New Mexico. ("Defendant" and "UNM" are treated synonymously herein).

4.  Defendant receives federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a) and is otherwise subject to Title IX.  Defendant maintains an Office of Equal Opportunity pursuant to Title IX, and is supposed to have a trained OEO investigator and Title IX Coordinator.

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 as all acts complained of occurred in Bernalillo County, New Mexico.

## III. BACKGROND FACTUAL ALLEGATIONS

7.  On the late evening of April 12-13, 2014, UNM football players Crusoe Gongbay, SaQwan Edwards and a former UNM student, Ryan Ruff, took an incapacitated Plaintiff into their BMW.  When she entered the vehicle, she had no shoes on, no keys, no purse, did not have her phone on her (she always had her phone with her),

and was disheveled, with clothes partially on or missing.  The men put her in the BMW saying they would take her to a party.  Instead of going to another party, each of the men raped Plaintiff in the vehicle, eventually dropping her off outside the dorms on campus.  Plaintiff made her way to a security person inside the dorm, crying.

8.  The security person called UNM police ("UNMPD"). Plaintiff reported what she knew of the rapes in the BMW to UNMPD immediately the morning of April 13, 2014, at approximately 2:50 a.m, including the fact that she believed one of the men was named "Crusoe."  She knew this because the other men called him by his name in the BMW and it is a fact she remembered.

9.   After reporting the incident, she underwent a nurse sexual assault examination where DNA evidence was collected from her body and her bruising and injuries were documented.

10. At the time of the first interview with police and the SANE examination, Plaintiff had no reason to believe that she had been drugged earlier in the evening and no testing was performed for rape drugs. Plaintiff was unaware there were several "missing hours" preceding the unconsented assaults in the BMW.

11. Testing for rape drugs must occur within a very limited window of time, normally within six to twelve (6-12) hours of ingestion, because most exit the body fast. This is a known fact to law enforcement officers and to persons required to be trained in sexual assaults/violence such as Title IX coordinators and sexual harassment claim investigators.

12. Unbeknownst to Plaintiff, she had no memory of approximately four hours prior to partially recalling events in the BMW.  Days after the assault and after the examination by the nurse, Plaintiff learned through social media that there possibly existed video depicting her at a location she had no memory of ever being at, and acting in a bizarre fashion.

13. It was extremely upsetting to Plaintiff to begin to hear that students may be seeing recordings of things she had no knowledge of.

14. According to UNMPD's investigative report, witnesses to the events leading up to Plaintiff's memory loss and to her behavior during the four hour period of memory loss, believed that Plaintiff acted as if she had been drugged (with a rape drug or some other substance like ecstasy). These witnesses also stated that her behavior changed very suddenly and in a manner which made no sense given how little alcohol she was witnessed to have consumed. These reports and witnesses were available to Title IX investigators, but were ignored.

15. According to UNMPD investigative reports, at least two other UNM football players and several other students were among those with Plaintiff at the time she may have ingested the rape drug or other substance that caused the described behavior, her memory loss of a four hour period, and her severely altered mental capacity.  One of these football players transported Plaintiff, without shoes, phone, keys, and in a disheveled condition from a dorm room to an off-campus house party location, where Gongbay, Edwards and Ruff picked her up upon arrival.  This player denied to police taking advantage of the incapacitated fellow student.

16. Upon information and belief, according to George Bleus, a criminal defense attorney for one of the perpetrators, there may be at least twelve videos of Plaintiff taken the night she was raped.  Plaintiff was eventually shown in the summer of 2014, three very short (10 second) video clips by the DA's office, which were pre-selected for the DA and for public dissemination by attorney Bleus. Mr. Bleus did not provide the District Attorney, the UNMPD or the OEO with video other than the three he selected out of the twelve he claimed were in existence.

17. Two of the three 10-second video clips show Plaintiff at a location other than the BMW and in an incapacitated condition.  Plaintiff has no memory of the events depicted on these two videos, and has no knowledge of anything depicted on these Snapchat clips, or of anyone taking the video clips.

18. The third video clip, taken inside of the BMW immediately prior to the rapes, clearly depicts the football player perpetrators.  The players are chanting the words, "Slutty Boys" while text was overlaid by whomever took the video on his phone stating: "SLUTTYBOY GANGBANG COMIN SOON."  The video suggests Plaintiff is being or soon will be forced to engage in sexual activity.

19. Merriam-Webster's Dictionary defines "gang bang" as "gang rape."

20. Plaintiff had no idea the men were recording themselves and her, and uploading clips via Snapchat, sharing the video with other students.   Plaintiff had no idea there were yet other videos of her with football players or others in an apartment or dorm room somewhere, apparently having sex, and standing around partially clothed saying bizarre things.

21. The football players and other male students surrounding the incapacitated Plaintiff did not report to police or campus personnel or dorm residents the incapacitated fellow student that they did not know who was acting drugged and dancing around provocatively. Instead, they recorded her and took advantage of her inability to consent to anything. Male students, including athletes, engaged in recording, not reporting the incapacitated female student, and some sexually assaulted her, and then lied to police about it.

22. Early in the morning of April 13, 2014, the Athletic Department or coaches became aware that Crusoe Gongbay, and possibly other football players, were involved in a gang sexual assault early that morning.  Gongbay and possibly other players were called in for a Sunday morning meeting.  According to witness statements available to the OEO and UNM administrators, Coach Davies met with Mr. Gongbay 'about the drunk girl situation last night'.

23. With knowledge of an alleged sexual assault, Coach Davie and any other member of the Athletic Department was required under Title IX to immediately report the allegation to the UNM's Title IX Coordinator.  Upon information and belief, no such report was made.

24.  Gongbay was interviewed by UNMPD on Sunday afternoon (April 13, 2014), *after* he had met with members of the UNM Athletic Department (Coach Davie), and had time to prepare for his interview.

25. At this first police interview, Mr. Gongbay denied that he was in the car at all with Plaintiff, or drove anywhere with Plaintiff.  He told police that he simply met her outside of a party, he told her his name and that he was a football player (to explain

how she knew his name), and talked with her for about ten minutes, leaving then to go home, by himself, where he lived alone.  Mr. Gongbay gave this April 13, 2014, statement to police before video surfaced which depicts him in the vehicle with fellow football players and with text indicating that a gang rape was 'comin soon', and before DNA samples were taken and returned by the lab, which, according to the OEO, proved his DNA was on her body.

26. Two days later, apparently after some discussion by players and coaches, on April 15, 2014, UNMPD was contacted by UNM assistant football Coach Brian Disdain, who conveyed to police that Mr. Gongbay had an alibi which would clear up all mis-understanding about the incident 'with the drunk girl'.  Coach Disdain informed UNMPD that Crusoe was with another woman from 12:00 midnight until at least 3:00 a.m. on April 12-13, 2014, and therefore had an alibi for the entire time plaintiff was supposedly in the BMW with him.  Coach Disdain even provided the woman's name and phone number to police so that police could follow up.  Coach Disdain explained to police that Mr. Gongbay did not disclose this alibi information during his first interview because he was embarrassed to say he was "with" a different woman somewhere else at the time.

27. UNMPD immediately interviewed the woman identified by Coach Disdain as 'Crusoe's alibi witness'.  Her testimony was so riddled with inconsistencies that it could not be taken as credible, and UNMPD even quickly learned she had been engaging in texts with Gongbay from different locations throughout the hours that she claimed to be with him.

28. Gongbay was arrested on April 21, 2014.  DNA evidence from Plaintiff's body conclusively identified him, (according to the Preliminary Determination Letter later issued by UNM's Office of Equal Opportunity on August 28, 2014).

29. Edwards was also arrested on April 21, 2014.  Upon information and belief, the fact that he was involved in the incident was known to members of the UNM Athletic Department or other UNM administrators or their proxies for the entire preceding week, and the Athletic Department withheld the fact of his participation in the gangbang from police, forcing UNMPD to learn of his involvement through other, investigative means which took a number of days.

30. To this day, Edward has refused to comment on the incident and the OEO has never even spoken to him about the facts of the case, even after the criminal investigation was dropped by the District Attorney's office. However, the three Snapchat video clips and DNA test results linking him to evidence collected from Plaintiff's body, speak loud and clear.

31. Ryan Ruff was arrested on April 22, 2014.  To this day, Ruff has refused to comment on the incident and to this day, OEO has not even spoken to him. DNA samples collected from Ruff matches that collected from Plaintiff's body, speaking for him, loud and clear, as a matter of science.

32. Upon information and belief, members of the UNM Athletic Department knew that former student and player Ruff, was involved in the group sex with a drugged or severely intoxicated student, and withheld the fact of his participation from police, forcing UNMPD to learn of his involvement through other investigative means.

33. Upon information and belief, as early as the Sunday morning of April 13, 2014, members of the UNM Athletic Department obtained enough information to know that something transpired in the BMW worthy of investigation, including that critical evidence might be contained in the BMW and knew, or could easily have obtained knowledge, of the location of the vehicle.  Such information was not, however, disclosed to UNMPD in time for it to collect potentially critical evidence, including condoms and other DNA evidence from the vehicle.

34. By the time the BMW was located and a warrant obtained to search and collect evidence from inside the vehicle on May 3, 2014, the vehicle had been sanitized clean.  Possibly critical physical evidence to supplement the video and what recall the Plaintiff had of events in the BMW was destroyed by perpetrator(s) as a result of the delaying conduct of UNM administrative personnel.  George Bleus, the lawyer for Mr. Ruff then went to the press to ridicule both UNMPD for ineptness, and the victim for "lying", apparently because the car search only showed that it had been sanitized.  Title IX investigators were no where to be seen or heard from, even though male student athletes were in the local press as involved with a female student's allegations.

35. Upon information and belief, at least two other football players and several other male students interacted with Plaintiff while she was under the influence of a rape drug and/or some other substance combined with alcohol, which altered her mental state the evening of April 12-13, 2014, according to other video and additional statements.

36. As noted above, one of these other football players transported Plaintiff, without her shoes, phone, keys and in a disheveled stated, from a campus dorm common room where witnesses describe her as if suddenly drugged, to the location where she was later met by Gongbay, Edwards and Ruff.  According to the OEO, this other football player reported at the time the perpetrators were put back on the team, that he had engaged Plaintiff in "consensual" sexual activity in the vehicle during the ride from the dorm to where Plaintiff was met by Gongbay, Edwards and Ruff; this was during the period of time when Plaintiff had reported she was unable to consent, and has no recollection of such an event.  The football player omitted this critical fact from the two different statements he gave UNMPD months earlier. OEO did not investigate.

37. Regardless, the new statement by the uncharged player creates a new OEO case other than the Gongbay-Edwards-Ruff case.

38. Although UNM administrators became aware of the additional football player's claimed involvement with Plaintiff during the hours she alleges she was unable to consent to sexual activity because of incapacitation, UNM did not open a new investigation of the new matter, as it was required to do under Title IX.

39. In fact, shockingly, OEO decided that this football player's statement that Plaintiff gave consent to him during the time she claims she was mentally incapacitated, meant that Plaintiff also somehow "consented" to whatever happened hours later in the BMW by other players.

40. This football player with inconsistent statements was the one and only witness interviewed by the OEO in its "investigation" of Plaintiff's rape claim, despite the OEO knowing of the existence of many other witnesses, many of whom would have

11

circumstantially corroborated Plaintiff's report of having been drugged, being incapacitated and not having consented to the activity in the BMW.  OEO chose to rely solely upon the one witness' testimony from hours before the BMW events, to "whitewash" the BMW rape allegations as 'consensual'.

## IV.  UNM'S FAILURE TO COMPLY WITH TITLE IX

41. UNM's duties to respond to and investigate the reported sexual assaults, failure to mitigate the impact on Plaintiff and protect her safety, and eliminate the ongoing effect of the assaults on her and other women, were triggered by approximately 4:00 a.m., on April 13, 2014 when UNMPD and the UNM Sexual Assault Response Team (SART) became aware of the assaults.

42. Independent investigation and actions by UNM administrators are required by Title IX regardless of any parallel criminal investigation. Criminal investigations can often take many months, or even a year or more.

43. Immediately after the rapes, Plaintiff's life fell apart.  She was constantly fearful of attack, had panic attacks being on campus, and moved out of her dormitory residence hall to live off campus with her parents. Plaintiff reported this to OEO.

44. While UNM accommodated Plaintiff somewhat with her course work after the rapes, it took no disciplinary action against Gongbay and Edwards, until April 22 after each was arrested. No efforts were made to reign in the unconsented video recordings circulating on the internet, or even locate and obtain them as evidence from male students. Thereafter UNM, with knowledge of the apparent sexual violence committed upon Plaintiff by football players, permitted the continuation of such

sexual harassment through its deliberate indifference as set forth in greater detail in Counts I and II below.

45. Indeed, a car load of football players pulled up alongside Plaintiff on one of her few visits to campus to move out of the dorms in May, 2014, and verbally harassed her, which she reported as feeling threatened. There was no accountability by UNM administrators, no action by Title IX personnel, and no comment by the Athletic Department or coaches regarding the verbal harassment from the car load of players.

46. On April 21 and April 22, 2014, upon arrests in the criminal justice system, Gongbay and Edwards were suspended from the football team, during the off-season. They were not suspended from school and no other disciplinary action was taken against them. They soon hired expensive private attorneys.

47. UNM did not consider opening a Title IX investigation until April 23, 2014, when Plaintiff expressly requested in writing that an investigation be performed.

48. Although OEO was supposed to initiate an immediate response to Plaintiff's complaint, it was May 13, 2014, when OEO acknowledged receipt of Plaintiff's written complaint, and indicated that it would soon *begin* an investigation.  No excuse was provided for the more than four week delay in beginning the investigation from when it learned of the sexual assaults on April 13, 2014.  Federal guidelines suggest that Title IX investigations be completed within sixty days.

49. OEO did not meet with Gongbay and Edwards until July 1 and 2, 2014, to inform them of the commencement of the investigation, (about 2.5 months after Plaintiff reported the BMW rapes).

50. On July 28, 2014, Plaintiff wrote to the OEO specifically requesting that it consider information and evidence about rape drugs, including availability of a nationally known expert career law enforcement detective and trainer, who was willing to provide to the OEO her opinions, as evidence, that Plaintiff was apparently given a rape drug and/or other substance, and that the sexual acts in the BMW were thus drug-facilitated rapes.  Plaintiff's letter even specifically identified rape drugs used by sexual predators which would account for her memory loss and behavior while on her feet, and that such drugging made her unable to consent to sexual activity.  At this time, Plaintiff also pointed out to OEO the positive DNA findings of her assailants, their inconsistent stories, and that video existed literally depicting the perpetrators in the BMW with her, with text written on the video by one of the perpetrators, indicating that a gang rape was about to occur.

51. The OEO refused to permit Plaintiff to present evidence of any kind that she was drugged with a rape drug or ingested a substance in addition to alcohol which together altered her mental state, precluding her ability to consent to sexual activity. It refused to accept testimony which would account for her total memory loss, and conduct.  OEO refused to accept and therefore consider this evidence as an explanation for the two ten-second Snapchat clips showing Plaintiff in some room with persons other than Gongbay and Edwards, somewhere other than the BMW, and which apparently was taken during the four hours of black-out prior to the rapes in the BMW.

52. The OEO instead decided to accept and consider the two ten-second video Snapchats from her blackout hours (prior to the BMW rapes), from some location unknown to

Plaintiff, regarding whether Plaintiff later consented to sexual activity with each

separate man in the BMW. This is remarkable because everyone knows, especially

women, that even if there was consensual sex with someone at some party, (and here

there was not, there was only the drugged behavior witnesses describe), that does not

equal consent to sex with that person's friends and teammates several hours later.

53. Although available, the OEO ignored the one video clip taken in the BMW wherein

Edwards, Ruff and Gongbay announce that a gang rape is "comin soon."

54. Upon information and belief, the Athletic Department improperly communicated with

members of the OEO investigative team, including Bryan Brock, the Title IX

Coordinator, regarding the outcome desired of the investigation, timing the specific

release of detailed press reports of 'the boys being back on the team', with the District

Attorney's decision to not prosecute.

55. Plaintiff alleges that this pre-determined result was reached in order to get the players

back on the team as the season approached.

56. As the Title IX sexual assault investigator, Heather Cowan was required to be trained

in how to perform an investigation of an act of sexual violence. She was required to

be trained in the use of rape drugs and the impact of these drugs on a person,

including the inability of a person to consent when on these drugs or even if heavily

intoxicated.  If so trained, Heather Cowan deliberately disregarded any such training

she had received while conducting the investigation of Plaintiff's claim.

57. The Title IX Coordinator, Bryan Brock, upon information and belief, was required to

be trained in how to perform an investigation of an act of sexual violence. He was

required to be trained in the use of rape drugs and the impact of these drugs on a

person, including the inability of a person to consent when on these drugs, or even if heavily intoxicated. Upon information and belief, he had no such training at all prior to his involvement in Plaintiff's claim.

58. Title IX sexual assault investigator Heather Cowan should have accepted and considered testimony from Plaintiff's expert, and considered the testimony of eyewitnesses that Plaintiff acted as if suddenly drugged.  She should not have accepted or considered conduct by Plaintiff involving other persons in the hours before the BMW, as probative of consent for what occurred in the BMW, especially where by all accounts Plaintiff had been acting as if drugged or heavily intoxicated.

59. As the Title IX Coordinator and the person who ultimately decided Plaintiff's complaint, Bryan Brock should have accepted and considered testimony from Plaintiff's nationally recognized expert regarding inability to provide consent, and that the players put a girl in her car and sexually abused her when she was by all accounts either drugged or heavily intoxicated.

60. On August 28, 2014, four months after Plaintiff filed her administrative complaint, the OEO issued a "Preliminary Letter of Determination" finding of "No Probable Cause."  The letter does not indicate which of the two independent claims of sexual assault the "no probable cause" went to, (each separate assault committed in the BMW warranted an independent investigation, and the only witness OEO spoke with suggested other unknown sex acts may have occurred prior to the BMW).  The letter indicates that OEO did not begin to contact witnesses until May 21, 2014, after school had let out for the summer, and that of the eight witnesses "contacted" once by OEO, only one witness responded.  That witness, a football player, responded only after

OEO contacted the Athletic Department because it knew that the witness was a football player. He appeared and announced consensual sex from the intoxicated girl during her black out four hours.

61. It is unclear whether the OEO investigation was a "whitewash" to protect athletes in a major sport at a major university, or a "whitewash" to protect male students 'just being boys' when confronted with an obviously intoxicated and incapacitated female student on campus. Either way, Plaintiff submits Title IX requires otherwise.

62. Moreover, the sudden admission of the football player in his statement to OEO of engaging in sexual activity with Plaintiff during the hours when Plaintiff alleges to have no memory at all, (whether true or not), constituted a reported act of sexual assault which should have been the subject of a whole new Title IX investigation, since OEO knew the act was during the reported black-out period.  No such investigation was commenced.

63. Very surprisingly, the Preliminary Determination letter also noted that OEO found significant that Mr. Gongbay had an alibi, (which required ignoring DNA science), and gave no credence whatsoever to the complete falsehoods in Mr. Gongbay's evolving statements to police, to wit:  having no roommate (he did have a roommate); that he went home alone after talking to the victim for only ten minutes outside of any vehicle (he did not, as shown by video); that he did not know a man with dread locks who drove a BMW (who police later identified as a former student and friend of his, Ryan Ruff); that he did not have sex with the victim (but DNA tests showed that he did); and was with a woman alibi the entire evening, (who police learned was texting Gongbay during the time she said she was with Gongbay).  Further, the OEO ignored

video taken by the perpetrators declaring a "gangbang" was "comin soon," depicting

them in the BMW with Plaintiff, which flatly contradicts the alibi that OEO found so

important, persuasive and over-riding of DNA science.

64. This video was even made public on June 26, 2014 by Ruff's attorney, the day *after*

the charges were dropped by the DA's office, at the same time the players were sent

to Ruidoso to join the team in summer practice.  Copies were even provided to the

press by Ruff's attorney.  Therefore, the OEO had access to copies of video which

directly contradicts its own conclusions.  OEO chose to not accept and review this

additional probative video, let alone obtain additional video clips controlled by male

students.

65. The Preliminary Determination letter also notes that the OEO did not interview either

Edwards or Gongbay, but rather determined their credibility based solely upon a letter

from each of their private attorneys generally denying Plaintiff's allegations. The

letter from Gongbay's attorney was dated *after* Gongbay was cleared by Coach Davie

to join the team in practice in Ruidoso, strongly suggesting a decision had already

been made that the star running back and 'poster boy' for UNM football was pre-

cleared by UNM-OEO.

66. The OEO neither sought nor obtained for consideration a copy of the sexual assault

nurse report noting significant bruising on Plaintiff's body, and noting the physical

proof of forced sexual activity.

67. The OEO relied upon selected interviews among those conducted by the UNMPD and

ignored other witness statements regarding the quick onset of Plaintiff's impairment

and the view that she appeared drugged.  These ignored statements were from

witnesses without an interest in the matter, who did not know the Plaintiff prior to the evening in question. OEO relied only on one football player's statement, (which itself contradicted an earlier statement to police).

68. After refusing to permit Plaintiff to present evidence by a nationally recognized expert that Plaintiff appeared to have been rape drugged, the OEO made a finding in its written report that there was no testimony about the possession or use of drugs that night. The OEO also stressed that there was no toxicology report indicating a rape drug, which every reasonably competent investigator of these types of assaults knows is out of a body within hours, and everyone in this case knew had not been done.

69. One of the reasons that no one knew about "the missing four hours" for several days is that after the players met with coaches, the players denied any involvement to police, a fake alibi witness was sent over to police, and police had to spend days finding out who the other players were, and where the BMW was.  Plaintiff only began hearing social media buzz because players and others were apparently exchanging Snapchat video clips of Plaintiff, which itself could be conduct for even further and separate Title IX review.

70. On August 12, 2014, an Albuquerque Journal article disclosed that Gongbay and Edwards suspension from the football team had been removed by UNM and that the men were "on their way to Ruidoso and are rejoining the team."   Football practice had just begun and Coach Bob Davie and Paul Krebs determined that the DA's office's decision to not move forward with a criminal prosecution (under a beyond a reasonable doubt standard of proof and based on the DA's review of only the three ten second video clips provided by attorney George Bleus), meant the men were

cleared of the Title IX investigation such that their suspensions could be removed. However, as of August 12, the OEO had not yet completed its Title IX investigation of the rapes, (nor had the police concluded its investigation, for that matter). Title IX regulations are clear that a Title IX investigation must be independent, and the outcome not based on the external fact that a criminal prosecution will not go forward.

71. The Athletic Department ignored with impunity the fact that a Title IX case was still open when they put the men back on the team, or alternatively, they already knew what the outcome of the Title IX investigation was going to be.

72. Upon information and belief, the criminal charges were dropped against Gongbay and Edward in part due to pressure lodged by the UNM Athletic Department, or proxies, and by intentional interference and failure to cooperate by the UNM Athletic Department with UNMPD.  As of August 12, 2014, the OEO could not have completed its investigation because Crusoe's written response, which was dated August 13, 2014, was written *after* his suspension from the football team was already lifted. The complete UNMPD report had not even been submitted to the District Attorney's office.

73. Title IX investigations require equal communications of outcomes to both complainant and accused, including simultaneous disclosure of an investigation determination.  UNM removed the suspension of Gongbay and Edwards on August 12, 2014, while not notifying Plaintiff that she failed to establish that the rapes occurred, until they mailed her a letter dated August 28, 2014, more than two weeks after Gongbay and Edwards were informed of the outcome.

74. Contrary to Title IX regulations, UNM did not have a person designated as its Title IX coordinator at the time Plaintiff filed her complaint with the OEO.

75. UNM later hired Bryan Brock to serve as its OEO coordinator in the middle of Plaintiff's investigation.  Upon information and belief, Bryan Brock had no specialized training in Title IX at the time he took office as head of UNM OEO and as UNM's designated Title IX compliance officer.  Upon further information and belief, when Bryan Brock participated in the investigation of Plaintiff's Title IX claim, he was not trained, as required by Title IX regulations, in the investigation of sexual harassment on school campuses, including training in the use of rape drugs and their effects on victims.

76. Upon information and belief, Bryan Brock's father was a prominent member of a past UNM football team.  Public statements made by Bryan Brock upon commencing employment with UNM as its Title IX compliance officer included statements specifically supportive of the football team in special light of his father's past participation on the team.  Bryan Brock's express favoritism for the football team in the media created a conflict of interest to which Plaintiff should have been informed and should have been given the opportunity to exclude Brock's participation in the determination of her complaint.

77. Upon information and belief, Bryan Brock was unqualified to perform a Title IX investigation determination having never worked in the setting of an education institution but only with New Mexico State government, his most recent employment prior to UNM-OEO being with the New Mexico State Department of Transportation.

78. Upon information and belief, on April 23, 2014, Heather Cowan was sued in her capacity of Title IX investigator for having allegedly performed an investigation of an allegation of student rape on the University of Michigan campus with deliberate indifference in violation of Title IX.  As in the present case, the Michigan lawsuit alleged that Ms. Cowan performed a Title IX investigation unfairly and with deliberate indifference, in order to meet a pre-determined outcome.

79.  The UNM-OEO did not hold a hearing under Title IX regulations, which would have permitted Plaintiff to present and explain evidence.  Plaintiff requested a hearing, and that evidence and testimony be accepted, to no avail.

80. Plaintiff appealed in writing the OEO's September 15, 2014, Final Letter of Determination on grounds: the determination was untimely and premature; was the result of an investigation which was not thorough; the sexual abuse nurse examiner was not even interviewed; UNMPD investigators were not even interviewed; the UNMPD investigation was not yet complete; the cell phones of the perpetrators were still not rounded up and submitted to forensic experts by OEO or anyone; expert witnesses offered by Plaintiff were not contacted and testimony on point was prohibited, despite Title IX regulations affirming that such testimony should be accepted, and especially given that Plaintiff's account has never changed; the inconsistencies and 180 degree swings in Gongbay's story changed materially twice, with a third version being depicted on the video of him in the BMW with Plaintiff; never even obtaining Edwards version of what occurred in the BMW but rather relying only upon his general denial by private counsel; ignoring the 180 degree

change in the other football player's statements regarding Plaintiff's conduct during

her reported four hour blackout; and among other things.

81. Plaintiff's appeal was denied by letter signed by UNM President Robert G. Frank.
According to UNM Policies and Procedures, UNM President is to become involved
in an OEO decision only in extraordinary circumstances when normal policies and
procedures have *not* been followed.

82. Pursuant to Title IX, as the person apparently deciding Plaintiff's appeal, President
Frank was required to be trained in all aspects of Title IX investigations.  Upon
information and belief, President Frank was not so trained.

83. It is unknown why Plaintiff's case warranted the extraordinary participation of
UNM's President, unless it was for the sake of media coverage suggesting Plaintiff
was a promiscuous liar as claimed by Attorney Bleus and the players, or to protect the
financial integrity of the Athletic Department and its players.  Such involvement
demonstrates a systemic willful indifference to Plaintiff's access to education free
from sexual assault and a cover-up investigation, while a student at UNM.


**V. PLAINTIFF DOES NOT RETURN TO UNM, LOSES HER UNM SCHOLARSHIP,
AND SUFFERS RE-VICTIMIZATION BY UNM'S WILLFUL INDIFFERENCE IN THE
PERFORMANCE OF IT'S INVESTIGATION AND LEGAL OBLIGATIONS**


84.  Plaintiff suffered harassment by male students on campus, who, upon information
and belief included football players, related to her allegation of gang rape in April,
2014.

85. Selected video of Plaintiffs' conduct at the Student Resident Commons prior to the
rapes in the BMW during some of the rapes were released to the public by an agent

for the players, while UNM did nothing to curb such behavior of the perpetrators-students. Plaintiff suffered irreparable harm as a result of this intentional misconduct, to her personal being and to her reputation.

86. The perpetrators-students and other students shared video on social media sites that were taken by male students of the incapacitated female Plaintiff during her four hour blackout-on-her-feet, and during the sexual assaults in the BMW, with no recourse under student behavior conduct, no reprobation, no assistance in rounding up the unconsented recordings, and because of deliberate indifference of UNM administrators and Title IX officials.

87. The Athletic Department reported to the press that the suspensions of Gongbay and Edwards from the football team were lifted, prior to the Title IX investigation being completed, which constitutes pervasive and severe continuation of the sexual harassment and reflects deliberate indifference to Plaintiff's complaints, indicating the investigative results were clearly pre-determined.

88. Plaintiff psychologically, emotionally and out of fear for her own physical safety, could not return to UNM for classes the rest of the 2014 Spring semester, or for the Fall 2014 semester.

89. Plaintiff's inability to attend classes at UNM in favor of the men's football team concerns and players who were not even interviewed by OEO and put back on the team is exactly the type of result that Title IX was designed to prevent.

90. Plaintiff was re-victimized by the Title IX investigative process being turned into "a whitewash" throughout the spring, which was rushed to get the players back on the team by opening day.

## COUNT I

### VIOLATION OF TITLE IX – 20 U.S.C. § 1681(A)
### (CLEARLY UNREASONABLE RESPONSE)

91. Plaintiff re-alleges and incorporates herein all allegations set forth above as though fully set forth herein.

92. UNM had actual knowledge of Plaintiff's sexual harassment and discrimination at the hands of Gongbay and Edwards.

93. UNM's responses to the harassment were clearly unreasonable in light of the known circumstances.

94. The discrimination, consisting of rapes of Plaintiff by student-athletes and the deliberate indifference to Plaintiff in the investigation and response to allegations of the rapes, and other conduct by UNM, resulted in risks to Plaintiff's safety and the loss of her ability to continue attending UNM. The discrimination was severe, pervasive, and objectively offensive, and it barred Plaintiff's access to educational opportunities and benefits.

95. Plaintiff was subjected to discrimination because of UNM's deliberate indifference to known acts of harassment, sexual violence, discrimination and retaliation, including without limitation, all of the allegations outlined above.

96. UNM also subjected Plaintiff to discrimination through its willful indifference, including but not limited to:

a. UNM did not have a Title IX Coordinator with experience and training in Title IX sexual assault investigations at the time of Plaintiff's sexual assault;

b.  UNM knowingly hired Bryan Brock as UNM's Title IX Coordinator, who had no training or experience in the investigation and/or determination of Title IX investigations of sexual assaults on an educational campus;

c.  UNM knowingly permitted Bryan Brock to decide Plaintiff's Title IX investigation when Mr. Brock had no experience or training in such investigations;

d.  by deliberately not permitting Plaintiff to remove Bryan Brock as the person determining her Title IX complaint after he expressed favoritism in the newspapers towards the football team;

e.  by deliberately permitting Coach Bob Davie and other football coaches and other members of the UNM Athletic Department to participate in the decision whether to sanction perpetrator-players, and the decision when to remove the sanctions, when Coach Bob Davie and the Athletic Department had a conflict of interest, including but not limited to jobs to promote the UNM football program. Involvement in the decision whether and how to sanction the football players for sexual assaults of an incapacitated woman, conflicted with their roles to portray the football team favorably in the media and to generate income for the football program and the University. The profitability of the football program was placed over the need for a prompt and fair investigation of Plaintiff's claims of a drugging, rapes, and sexual harassment and to prevent continued harassment and sexual violence, without comment by OEO and the Title IX Coordinator.

f.  by UNM hiring a Title IX investigator, Heather Cowan, alleged to have engaged

with deliberate willfulness in the conducting of Title IX sexual assault

investigations at Michigan;

g.  by deliberately ignoring blatant inconsistencies in male students and football

players' stories, especially compared to video evidence and DNA evidence;

h.  by the deliberate decision to delay the OEO investigation until the semester was

over, which resulted in witnesses leaving campus and becoming unavailable for

interview;

i.  by the deliberate decision to send only one notice to potential witnesses and not

seeking follow-up after the semester ended and the student witnesses left campus,

or contacting witnesses in the Fall when they returned, in a era where cell phones

and email follow students wherever they go;

j.  by deliberately performing only one witness interview in its entire investigation

(of a football team member), and failing to note significant inconsistencies with

his prior interviews;

k.  by deliberately refusing to open an investigation on the one football player

interviewed, after he suddenly claimed that he engaged in sexual conduct with

Plaintiff during a period of time when she claimed she was unable to consent to

such conduct and has no recollection of the event, if it occurred; and deciding that

his new account of "consensual activity" provided "blanket consent" to all that

happened thereafter even in the BMW with different players;

l.  by deliberately not seeking to obtain videos known to exist during the hours that

independent witnesses describe her as acting drugged, (with the existence of such

tapes being public knowledge due to public disclosure of such video at a press

conference held by the attorney for Ryan Ruff on June 26, 2014);

m.  by the deliberate decision to not interview the actual perpetrators in the OEO

investigation in order to perform a face-to-face credibility assessment, instead

accepting a written, general denial of Plaintiff's claims by private attorneys;

n.  by the deliberate decision to not interview the sexual assault nurse to hear about

her medical examination of Plaintiff, which evidence included physical evidence

of rape;

o.  the deliberate decision to not view photographs taken by UNMPD of Plaintiff's

physical injuries throughout her body which were consistent with sexual assault;

p.  the deliberate decision to not accept testimony from Plaintiff's proffered expert on

'rape drugging' and 'alcohol incapacitation' to account for her unknowing

conduct and memory loss prior to the rapes, and relevant to Plaintiff's inability to

consent;

q.  by the deliberate rendering of a decision noting and relying on the absence of

testimony that Plaintiff was under the influence of a rape drug, after refusing to

accept such testimony from Plaintiff or permit a hearing at which such testimony

could be presented, and ignoring the witness statements given to the UNMPD that

Plaintiff's conduct was consistent with a rape drug drugging;

r.  by the deliberate coordination with the Athletic Department to complete the Title

IX investigation in time to clear players in time to play football for the team

during the playing season;

s.  by the deliberate decision to do nothing to eliminate the sexual assault risks posed by Gongbay and Edwards, to prevent its recurrence and address its effects, just so that Gongbay and Edwards could continue to play football for UNM;

t.  by the deliberate decision to rely upon the District Attorney's decision to not prosecute in the criminal justice system as a deciding factor to re-instate players to the football team, even before formally completing its OEO investigation;

u.  by the deliberate decision to not accommodate Plaintiff with safety measures and accommodations so that she could safely pursue her studies, and was compelled to leave school;

v.  by the OEO's deliberate non-compliance with its own standards, its own definition of consent, its own requirement to weigh all of the evidence, which left Gongbay and Edwards undisciplined and playing football and Plaintiff unable to return to UNM;

w.  by the decision to not follow an appeal process which involved a qualified Title IX investigator, but which involved the President of the University.

98. Because of UNM's deliberate indifference, Plaintiff suffered losses of educational opportunities and benefits, along with injuries, damages, and losses, including but not limited to:  emotional distress, fear, anxiety, trauma, lost of future earnings, and earning capacity damage to and delays in her pursuit of higher education, loss of trust and hedonic damages, and other related damages.

**COUNT II**
**VIOLATION OF TITLE IX – 20 U.S.C. § 1681(A)**
**(HOSTILE EDUCATIONAL ENVIRONMENT)**

Plaintiff re-alleges and incorporates herein all allegations set forth above.

99. Plaintiff was subjected to physical sexual harassment, sexual assaults, sexual
   discrimination and retaliation that were so severe, pervasive and objectively offensive
   that she was denied access to educational opportunities and benefits.

100.    As a result of UNM's deliberate indifference, a hostile educational environment
   developed for Plaintiff, she was forced to leave campus, and she lost her educational
   opportunities at the University.

101.    Because of the ongoing sexually hostile environment that UNM deliberately
   failed to address, Plaintiff suffered losses of educational opportunities and benefits, along
   with injuries, damages and losses, including but not limited to loss of scholarship, cost of
   replacement education; lost future earnings and loss of earning capacity; damage to and
   delays in her pursuit of higher education, fear, anxiety, trauma, emotional distress, lack of
   trust and hedonic damages.

   **WHEREFORE**, Plaintiff respectfully requests judgment against Defendant
awarding:

   a. Damages in amounts to be established at trial, including without limitation,
      reimbursement and prepayment for all of Plaintiff's tuition and related
      expenses; value of the loss of Plaintiff's UNM scholarship; expenses incurred
      by Plaintiff as a consequence of the sexual assaults and harassment, such as
      therapy, medications, and any related psychological or medical issues;
      damages for deprivation of equal access to educational benefits and
      opportunities provided by UNM; damages for past, present and future
      emotional pain and suffering, ongoing and severe mental anguish; loss of past,

present and future enjoyment of life, and past and present lost earnings and

earning capacity, if any, and any other damages proven during litigation;

b.  Pre-and post-judgment interest;

c.  Costs and expenses as allowed by law;

d.  Attorneys' fees pursuant to 42 U.S.C. § 1988(b);

e.  Such other and further relief as the Court may deem just and proper.

f.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury as to all matters so triable pursuant to the

Federal Rules of Civil Procedure.

LAW OFFICE OF BRAD D. HALL

/s/ Brad D. Hall 02/19/15
Brad D. Hall
320 Gold Ave SW, Ste. 1218
Albuquerque, NM 87102-3216
Phone: (505) 255-6300
Email: brad@bhallfirm.com

*-and-*

Lisa P. Ford
c/o 320 Gold Ave SW, Ste. 1218
Albuquerque, NM 87102-3216
Phone: (505) 385-7443
Email: lford@swcp.com